# COMMONWEALTH OF VIRGINIA



**EXHIBIT**

_A_

RECEIVED

MAY 0 3 2018

BY:

ARLINGTON CIRCUIT COURT
Civil Division
1425 NORTH COURTHOUSE RD
ARLINGTON VA
(703) 228-7010

Summons

To: ARLINGTON COUNTY, OFFFICE OF
THE COUNTY ATTORNEY
SERVE: STEVE MACISAAC
2100 CLARENDON BLVD.
STE. 403
ARLINGTON VA 22201

Case No. 013CL18001143-00

The party upon whom this summons and the attached complaint are served is hereby notified that unless within 21 days after such service, response is made by filing in the clerk's office of this court a pleading in writing, in proper legal form, the allegations and charges may be taken as admitted and the court may enter an order, judgment, or decree against such party either by default or after hearing evidence.

Appearance in person is not required by this summons.

Done in the name of the Commonwealth of Virginia on, Thursday, April 19, 2018

Clerk of Court: PAUL F. FERGUSON

by _____
( CLERK/DEPUTY CLERK )

Instructions:

OFFICE OF THE COUNTY ATTORNEY
ARLINGTON, VIRGINIA
RECEIVED

APR 2 4 2018

Hearing Official:

BY_____
TIME_____

2018 APR 20 AH 10: 35

RECEIVED
SHERIFF'S OFFICE
ARL. COUNTY, VA

Attorney's name:

**V I R G I N I A :**

## IN THE CIRCUIT COURT FOR THE COUNTY OF ARLINGTON

**MADHAVI ANANTH,**

    Plaintiff,

v.

Case No.: _CL18 - 1143_

**ARLINGTON COUNTY**

    Please Serve:  Arlington County
                  Office of the County
                  Attorney
                  Attn: Steve MacIsaac
                  2100 Clarendon Blvd.
                  Suite 403
                  Arlington, VA 22201

**RECEIVED**

**APR 1 7 2018**

PAUL FERGUSON, CLERK
Arlington County Circuit Court
by _____ Deputy Clerk

**DIAMOND TRANSPORTATION
SERVICES, INC.**

    Please Serve: R/A: CT Corporation System
                 4701 Cox Road, Suite 285
                 Glen Allen, VA 23060

**TRANSPORTATION, INC.**
d/b/a **RED TOP CAB** and
**RED TOP CAB OF ARLINGTON**

    Please Serve: R/A Thomas O. Lawson
                 10805 Main Street, Suite 200
                 Fairfax, VA 22030

    Defendant(s).

**TRIAL BY JURY DEMANDED**

## COMPLAINT

COMES NOW, the Plaintiff Madhavi Ananth ("**Ms. Ananth**"), by counsel, and moves this

Honorable Court for judgment against Arlington County (the "**County**"), Diamond Transportations

Service, Inc. ("**Diamond**"), and Transportation, Inc. d/b/a Red Top Cab and Red Top Cab of

1

Arlington ("**RTC**") (collectively the "**Defendants**"), on the grounds and praying for the relief hereinafter set forth:

## PARTIES

1.      Plaintiff, Ms. Ananth, is a resident of the Commonwealth of Virginia, specifically residing in Arlington, Virginia.

2.      Defendant, Arlington County, a public entity, is a county in the Commonwealth of Virginia that operates and manages the Arlington Transit and Specialized Transit for Arlington Residents.

3.      Defendant, Diamond, is a privately held Virginia Corporation with a principal place of business in Illinois.

4.      Defendant, RTC, is a privately held Virginia Corporation with a principal place of business in Arlington, Virginia.

5.      At all times relevant, Defendants' managers, employees and/or agents have acted with the consent of, under the control and supervision of, and/or, within the scope of their authority as agents of the Defendants.

## JURISDICTION AND VENUE

6.      Jurisdiction is proper in this Court pursuant to Virginia Code §§ 8.01-328.1(A)(1),(2),(3).

7.      Venue is proper in this Court pursuant to Virginia Code § 8.01-262.

## STATEMENT OF FACTS

8.      The Arlington County Department of Environmental Services includes a Transportation Division of which the Transit Bureau is part.  The Transit Bureau comprises Arlington Transit ("**ART**") and the Specialized Transit for Arlington Residents ("**STAR**") paratransit service.

9.      The Transit Advisory Committee (TAC) reviews transit services provided in Arlington County, including ART and STAR.

2

10.     The County operates and manages ART and STAR.

11.     ART is a "local passenger bus service" which provides public fixed route service in Arlington County, Virginia.

12.     STAR is Specialized Transportation for Arlington Residents and is part of Arlington Transit (ART). STAR serves Arlington residents who have difficulty using public fixed route transit due to the effects of age, disability or environmental conditions. All pickup and destination addresses of STAR are within 3/4 mile of a transit route.

13.     STAR is a shared ride paratransit service intended to provide a comparable level of transportation to that provided by the public fixed routes: ART, Metrobus and Metrorail.

14.     Paratransit means comparable transportation service required by the ADA for individuals with disabilities who are unable to use fixed route transportation systems. 49 C.F.R §37.3.

15.     All rides of STAR are arranged in advance through the STAR Call Center, through the Web, or through STAR IVR. STAR rides are provided on a curb-to-curb basis, and trips are scheduled without designation of the purpose of the trip.

16.     STAR is the County's alternative to using MetroAccess, a shared ride paratransit service established by the Washington Metropolitan Area Transit Authority (WMATA) under provisions of the ADA.

17.     The County is responsible for implementing procedures to ensure that both STAR and ART maintain compliance with ADA Title II, Rehabilitation Act, and the Virginia Disabilities Act. Upon information and belief, Arlington County receives federal financial assistance as that term is used in 29 U.S. Code § 794.

18.     Ms. Ananth, a disabled Arlington resident, relies upon STAR as her method of transportation for employment and critical medical appointments.

3

19.    Ms. Ananth's disabilities include occipital neuralgia, trigeminal neuralgia, neurogenic thoracic outlet syndrome, low back pain, calf strains, achilles tendonitis and peroneal neuropathy.

20.    Ms. Ananth's physical impairments prevent her from activities such as arm elevation, lifting, carrying, pushing, pulling, prolonged repetitive strain activity, standing and walking for extended periods of time particularly with carrying belongings, complete lacing of shoes, wearing heavy winter coats, caps, socks, and winter boots, and otherwise restricts her physical movements.

21.    Because these diagnoses of impairment substantially limit Ms. Ananth's major life activities, she is a qualified individual with disability as that term defined in 42 U.S. Code § 1231(2) of the ADA and pursuant to the applicable definition under the Rehabilitation Act.

22.    Ms. Ananth's impairments are noted in Defendant's records and Defendants regard Ms. Ananth as having such physical impairments.

23.    Ms. Ananth has been certified eligible for ADA Paratransit Services provided by Metro Access since late 2015 through October of 2022, due to her functional inability to navigate the fixed route system. Hence, she meets the eligibility requirements of paratransit services including STAR.

24.    Ms. Ananth first enrolled with STAR in or around December 2015, and she provided certification and information related to her disabilities at or around such time.

25.    In order to provide paratransit transportation services, STAR utilizes certain privately held transportation companies such as RTC and Diamond for both vehicles and provision of service.

26.    Although STAR has entered into contractual arrangements with RTC and Diamond, STAR is required to ensure that RTC and Diamond meet the requirements of 49 C.F.R. § 37 that would apply to STAR, if STAR itself provided the service. 49 C.F.R § 37.23(a)

27.    Although RTC and Diamond are private entities, they "stand in the shoes" of STAR, with

4

whom they contract for both provision of service and vehicle acquisition. 49 C.F.R. § 37.23 Appendix D.

28.     Defendants have repeatedly failed, and in many instances refused, to accommodate Ms. Ananth's disability from origin to destination. Defendants denied such requests by a) declining to open door of vehicle; b) declining to provide assistance with seatbelts, arm rests, push unoccupied passenger seats forward, c) declining to provide door-to-door assistance during extreme weather conditions, doctors' and physical therapy appointments.

29.     On a number of occasions, Defendants have also a) failed to assist her into the vehicle,  b) failed to pull the vehicle to the curb, forcing her to cross through the street amidst oncoming traffic where pedestrians are prohibited from crossing,  c) forced her to board the vehicle from street side instead of curb side amidst oncoming traffic, thereby posing a direct threat to her personal safety, d) left her stranded without a ride, e) arrived greater than thirty (30) minutes late for pick-up, f) made fun of or accused her of not having a disability, g) threatened to suspend her privileges if she continued to request modifications, and h) failed to investigate and/or equitably resolve complaints filed both by Plaintiff or against Plaintiff.

30.     In or around June 2016, Ms. Ananth received a letter from STAR, wherein Ms. Ananth was cited for improper and baseless complaints. STAR threatened Ms. Ananth with suspension of her privileges on the basis of, a) the unsubstantiated complaints it had received against her, and b) future complaints it would receive against her.

31.     In response, Ms. Ananth requested the County provide a) specifics of the allegations outlined in its letter; b) evidence of such allegations; c) outcomes of investigations it had conducted; and d) a chance to appeal. These opportunities were denied.

32.     In or around June 2016, Ms. Ananth called Diamond following instances with a certain

5

Diamond driver, Charles, wherein Charles failed to accommodate Ms. Ananth's disability. In or around the same time, Ms. Ananth was subjected to verbal abuse, told to get out of the car, and left stranded on the side of the road at a busy intersection, by Charles.

33.     During that conversation, Ms. Ananth requested, *inter alia*, that Charles no longer be the driver providing her transportation.

34.     Ms. Ananth also suffered similar instances with RTC drivers.

35.     On November 5, 2016, a certain Diamond driver named Linda, declined to open the vehicle door for Ms. Ananth and ridiculed Ms. Ananth of her disability.

36.     As a result, Ms. Ananth was forced to wait outside in the cold with her belongings for approximately thirty minutes, while she attempted to resolve the issue with STAR. She was late for her appointment, and suffered exacerbation of disability symptoms and emotional distress.

37.     On or around January 3, 2017, Charles refused to provide Ms. Ananth with transportation services, inaccurately claiming that Ms. Ananth was outside STAR's established ten (10) minute pick up window.

38.     As a result, Ms. Ananth was forced to wait outside in the cold with her belongings for approximately thirty minutes, while she attempted to resolve the issue with STAR. She was late for her appointment, and suffered emotional distress and exacerbation of disability symptoms.

39.     On or around January 25, 2017, Charles refused to open the vehicle door for Ms. Ananth and otherwise failed to accommodate her physical limitations and disabilities.

40.     As a result, Ms. Ananth was forced to wait outside in the cold with her belongings for approximately thirty minutes, while she attempted to resolve the issue with STAR. She was late for her appointment, and suffered emotional distress and exacerbation of disability symptoms.

41.     On or around May 18, 2017, Charles again failed to accommodate Ms. Ananth by refusing

6

to recline the arm rest or buckle Ms. Ananth's seat belt. Instead, he became disruptive and verbally abusive stating that she was "a bitch" "a shithole" an "invalid" and a "cripple." Ms. Ananth mentioned to Charles she would be filing a complaint against him. In response, Charles filed a baseless complaint against Ms. Ananth.

42.    Again, Charles left Ms. Ananth stranded away from her home. Ms. Ananth was forced to wait outside with her belongings for approximately thirty minutes. Ms. Ananth made several frantic calls to STAR for assistance but STAR declined to assist her. She was late for her work, suffered emotional distress and exacerbation of disability symptoms. She was eventually forced to call a Lyft in order to obtain transportation.

43.    Ms. Ananth reported these instances again to STAR and Diamond and again requested Charles not be assigned as her driver.

44.    In or around August 2017, Ms. Ananth received a letter from Diamond informing her that Charles would no longer be her driver as he had been fired following incidents of May 18, 2017 and earlier.

45.    Later that month, however, Charles was again assigned to provide Ms. Ananth transportation.

46.    Ms. Ananth called STAR and reported the situation, but was cited as a "no show" for refusing to ride with Charles.

47.    As a result, Ms. Ananth was forced to incur additional expenses and arrange her own transportation without accommodation. STAR refused to reimburse her for these costs. She was late for her work, suffered emotional distress and exacerbation of disability symptoms.

48.    On or around September 14, 2017, Charles was again assigned to provide Ms. Ananth transportation and arrived significantly late by more than 30 minutes.

7

49.     Ms. Ananth called STAR and reported the situation, but was again cited as a "no show" for refusing to ride with Charles.

50.     As a result, Ms. Ananth was forced to incur additional expenses and arrange her own transportation. STAR refused to reimburse her for these costs. She was significantly late for her work, missed work, suffered emotional distress and exacerbation of disability symptoms.

51.     On or around September 18, 2017, Charles was again assigned to provide Ms. Ananth transportation. Again, Charles became disruptive, referred to Ms. Ananth as a "bitch," in front of Ms. Ananth's residence and neighbors. Ms. Ananth mentioned to Charles she would be filing a complaint against him. In response, Charles filed a baseless complaint against Ms. Ananth. Ms. Ananth chose not to ride with him.

52.     Ms. Ananth called STAR and reported the situation, but was again cited as a "no show" for refusing to ride with Charles.

53.     As a result, Ms. Ananth was forced to incur additional expenses and arrange her own transportation. STAR refused to reimburse her for these costs. She was significantly late for her work, suffered emotional distress and exacerbation of disability symptoms.

54.     Ms. Ananth reported these failures to accommodate to STAR again.

55.     In response to her reporting of the incident and expressing intent to take legal action to assert her rights under the ADA, STAR issued Ms. Ananth a letter informing her that her paratransit services were suspended for a week. As a pretext for the suspension, STAR cited Ms. Ananth with improper and baseless allegations.

56.     In response, Ms. Ananth requested STAR provide a) specifics of the allegations outlined in its letter; b) evidence of such allegations; c) outcomes of investigations it had conducted; and d) a chance to appeal and contest these allegations. These opportunities were denied

57.   During her suspension, Ms. Ananth was not accommodated by STAR, not provided reimbursement for her costs of alternate transportation. She suffered emotional distress and exacerbation of disability symptoms.

58.   On October 2, 2017, Ms. Ananth met with RTC to express her concerns related to ADA non-compliance of its drivers. RTC expressed that it was aware of her concerns and while it attempts to train its drivers, it could not guarantee ADA compliance from its drivers.

59.   On or around October 4, 2017, Ms. Ananth filed a complaint with STAR after transportation was not provided to her as requested and scheduled. As a result, Ms. Ananth was forced to take multiple alternative forms of transportation which caused her emotional distress and exacerbation of symptoms.

60.   On October 26, 2017, Charles was again assigned to provide Ms. Ananth transportation.

61.   Ms. Ananth was again cited as a "no show" for refusing to ride with Charles, forced to arrange her own transportation, was late to work, incurred additional costs and suffered emotional distress and exacerbation of disability symptoms.

62.   On or around November 16, 2017, Ms. Ananth was returning from a medical trip from the Regan National Airport. An RTC driver who picked-up Ms. Ananth became disruptive, ridiculed and accused her of fabricating her disability and angling for special treatment when she requested assistance opening the door and helping with her belongings. The RTC driver also threatened to report her to STAR and have her suspended from the program if she continued to request reasonable modifications or complained. He also threatened to collaborate with other RTC drivers to do so.

63.   As a result, Plaintiff filed a complaint with STAR.

64.   On November 27, 2017, Ms. Ananth received a letter from STAR threatening to penalize

her with "no shows" if she refused any ride from Charles.

65.     Ms. Ananth again simply requested a different driver be provided and that her disability be appropriately accommodated.

66.     On December 18, 2017, an RTC driver ridiculed Ms. Ananth for being unable to open her door. Ms. Ananth filed a complaint with STAR. STAR did not provide a resolution.

67.     On numerous occasions, the drivers of particularly RTC, have requested that Ms. Ananth state and describe her medical conditions, ridiculed her for being unable to help herself into the vehicle, and requested that she demonstrate her disability and use of limbs so that they could determine if Ms. Ananth was really disabled and in need of such assistance.

68.     On December 29, 2017, an RTC driver refused to assist Ms. Ananth to the door when she arrived at her destination.  Upon reaching the destination, the RTC driver asked her to get out of the vehicle and refused to assist her in doing so. Ms. Ananth reported. Ms. Ananth filed a complaint with STAR. STAR did not provide a resolution.

69.     On January 2, 2018, an RTC driver who arrived before the scheduled pick-up time became made multiple harassing phone calls to Ms. Ananth threatening to leave, and then resorting to verbal outbursts in front of Ms. Ananth's workplace and her co-workers. Ms. Ananth mentioned to the RTC driver, that she would be filing a complaint against him. In response, the RTC driver filed a baseless complaint against Ms. Ananth.

70.     On January 4, 2018, in response to the baseless complaint filed by the RTC driver, STAR sent several threatening and intimidating emails to Ms. Ananth, in which STAR threatened Ms. Ananth with a progressive suspension of her privileges for two (2) weeks, on the basis of a) the complaint it had received from the RTC driver against her, and b) the next complaint it would receive against her in the future. In its emails, STAR indicated that it had copied Diamond and

RTC on these emails.

71.     In response, Ms. Ananth requested STAR provide a) specifics of the allegation outlined in its emails; b) evidence of such allegations; c) outcomes of investigations it had conducted; and d) a chance to present evidence and appeal. These opportunities were denied. Ms. Ananth suffered intense emotional distress and exacerbation of disability symptoms.

72.     Ms. Ananth requested that STAR send any complaint resolutions to her mailing address rather than through email. STAR declined this request.

73.     On January 4, 2018, Diamond provided Plaintiff transportation to Lee Highway in East Falls Church instead of 4040 Fairfax Drive in Arlington, causing Ms. Ananth to miss her medical appointment. Ms. Ananth filed a complaint with STAR, but received no resolution.

74.     On January 8, 2018, Ms. Ananth sent STAR a letter notifying STAR of their continued failures to accommodate and requesting adequate reasonable accommodations.

75.     On January 17 and 23, 2018, RTC drivers became disruptive, ridiculed and accused Ms. Ananth of fabricating her disability and angling for special treatment when she requested assistance opening the vehicle door.

76.     On February 14, 2018, Charles was again assigned to provide Ms. Ananth transportation.

77.     Ms. Ananth was again cited as a "no show" for refusing to ride with Charles, forced to arrange her own transportation, was late to work, incurred additional costs and suffered emotional distress and exacerbation of disability symptoms.

78.     On February 19, 2018, an RTC driver failed to pull up the vehicle to the curb and forced Ms. Ananth to cross the street without any assistance, amidst oncoming traffic, where pedestrians are prohibited from crossing. The RTC driver has also forced her to on board its vehicle from street side instead of curb side amidst oncoming traffic. Ms. Ananth filed a complaint with STAR. STAR

did not provide a resolution.

79.     On February 21, 2018, an RTC driver who arrived before the scheduled pick-up time became seriously disruptive made multiple harassing phone calls to Ms. Ananth threatening to leave, and left prior to the scheduled pick-up time. Ms. Ananth was in a medical appointment. Ms. Ananth filed a complaint with STAR.

80.     On February 28, 2018, in response to her complaint, STAR sent several intimidating emails to Ms. Ananth, in which it threatened her that certain reasonable modifications and established policies would no longer be available to her. Specifically STAR threatened her that RTC and Diamond would a) no longer pick her up at the entrance and/or origin requested, and b) no longer wait for her during the established ten (10) minute pick up window. Hence, STAR treated Ms. Ananth less favorably compared to other riders. Ms. Ananth suffered intense emotional distress and exacerbation of disability symptoms.

81.     On or around March 12, 2018, Ms. Ananth was returning from a medical trip from Dulles Airport.  Ms. Ananth made several calls to STAR requesting to be picked up from the "Arrival Level", as directed by the United Airlines Wheelchair Service.

82.     However, STAR declined Ms. Ananth's request, citing RTC's policies. STAR instructed Plaintiff to walk to an outside parking lot in the cold, about 0.3 miles away and wait standing in the uncovered parking lot for at least 45 minutes for her ride from RTC. Ms. Ananth was physically unable to do so and decided to seek help. In doing so, she walked with her belongings for about 30 minutes, including ramps with no escalators or elevators, until STAR eventually agreed, upon instruction from the airport information desk, to pick Plaintiff up from the "Arrival Level". Ms. Ananth suffered intense emotional distress and exacerbation of her disability symptoms. Ms. Ananth filed a complaint against STAR but received no resolution.

83.   On March 26, 2018, STAR declined Ms. Ananth's reasonable accommodation requests by

a) failing to provide door-to-door service, and b) failing to provide complaint resolution by mail.

Instead, STAR sent Ms. Ananth multiple intimidating and threatening emails late at night which

caused her intense emotional distress and exacerbation of disability symptoms.

84.   On numerous occasions, Ms. Ananth has experienced significant delays greater than thirty

(30) minutes. For example, on numerous occasions RTC drivers have provided transportation to

or from 425 3rd St NW instead of the scheduled pickup address at 425 3rd St SW. RTC drivers

have also provided transportation at 1021 Arlington Blvd. instead of scheduled pickup address at

1021 N Garfield St. Plaintiff was forced to wait or take alternative transportation.

85.   Drivers have also arrived substantially earlier than the requested pick-up time, left when

Plaintiff could not arrive early, threatened to leave, failed to wait for Plaintiff during STAR's

established ten (10) minutes window for pick-up, filed false complaints against her and reported

her as a "no show".

86.   At the time of the filing of this Complaint, these discriminatory and retaliatory practices

continue to persist, including the failure to provide "origin to destination" reasonable

modifications, denial of rides, and other failures identified herein.

## COUNT I
## Discrimination in Violation of
## the Title II of the Americans with Disabilities Act,  42 U.S.C. § 12131, et seq.

87.   Plaintiff hereby incorporates by reference and re-alleges each of the allegations contained

in the preceding paragraphs of this Complaint as if set out here in full.

88.   Ms. Ananth's physical impairments prevent her from activities such as arm elevation,

lifting, carrying, pushing, pulling, prolonged repetitive strain activity such with the keyboard,

standing and walking for extended periods of time, particularly with carrying belongings, complete lacing of shoes, wearing heavy winter coats, caps, socks, and winter boots, and otherwise restricts her physical movements. Because her physical impairments substantially limit her major life activities as discussed, she is a qualified individual with disability as that term is defined in § 12131(2) of the ADA.

89.    Ms. Ananth has been certified eligible for ADA Paratransit Services provided by Metro Access since late 2015 through October of 2022, due to her functional inability to navigate the fixed route system. Hence, she meets the eligibility requirements of paratransit services including STAR.

90.    Under Title II of the ADA, Defendants are prohibited from discriminating against Ms. Ananth, on the basis of her disability, in connection with the provision of transportation service. 49 C.F.R §37.5 (a).

91.    Pursuant to the Title II of the ADA, Defendants are prohibited from excluding Ms. Ananth from participation in, or denying her from the benefit of its services, programs, and activities on account of her disability. 28 C.F.R §35.130 (a).

92.    Through the Defendants' actions as described above, Defendants discriminated against Ms. Ananth on the basis of her disability, in violation of the Title II of ADA.

93.    On numerous occasions certain paratransit services were not provided to Plaintiff. Further, Plaintiff's paratransit services were suspended due to her disability and/or Defendants' perception that Plaintiff was disabled. Defendants excluded Plaintiff from participation in and denied Plaintiff the benefits of the County's paratransit services.

94.    Pursuant to the Title II of the ADA, the County is required to make reasonable modifications in policies, practices, and/or procedures when the modifications are necessary to

14

avoid discrimination on the basis of disability, or to provide program accessibility to their services, subject to the limitations of 49 C.F.R.§37.169 (c)(1)-(3). 49 C.F.R (§37.5 (i)(3)).

95.     Under the Title II of the ADA, RTC and Diamond are required to make reasonable modifications in policies, practices, and/or procedures when the modifications are necessary to avoid discrimination on the basis of disability and would not fundamentally alter the nature of its programs, services and activities. 49 C.F.R §37.5 (i)(2).

96.     In 2015, the Department of Transportation (DOT), amended its ADA regulations by issuing the final rule on Reasonable Modification of Policies and Practices.[1] As stated in the final rule's preamble, reasonable modification means that "the nature of an individual's disability cannot preclude a public transportation entity from providing full access to the entity's service unless some exception applies." Appendix E to 49 C.F.R.§37 contains 27 scenarios and provides guidance as to whether a particular passenger request should be granted or denied consistent with the final rule.

97.     On numerous occasions, Plaintiff has requested reasonable modifications for a non-discriminatory driver, adequate response times, and physical assistance with the limitations associated with her disabilities. Defendants have failed to provide these reasonable modifications.

98.     Additionally, Defendants have denied such requests as a) declining to open door of vehicle; b) declining to provide assistance with seatbelts, arm rests, push unoccupied passenger seats forward, c) declining to provide door-to-door assistance during extreme weather conditions

---

[1] DOT Final Rule, "Transportation for Individuals With Disabilities; Reasonable Modification of Policies and Practices"; Federal Register, vol. 80, no. 49 (80 FR 13253, Mar. 13, 2015).

and doctors' and physical therapy appointments, d) failing to make provisions to adhere to STAR's established ten (10) minute pick-up window and e) declining to pick her up from the origin and/or entrance requested.

99.     Defendants have also a) failed to assist her into the vehicle,  b) failed to pull the vehicle to the curb, forcing her to cross through the street amidst oncoming traffic where pedestrians are prohibited from crossing,  c) forced her to board the vehicle from street side instead of curb side amidst oncoming traffic, thereby posing a direct threat to her personal safety d) left her stranded without a ride, e) failed to assist from door-to-door when needed, particularly after doctors' appointments, physical therapy appointments and inclement weather, f) arrived greater than thirty (30) minutes late for pick-up, g) made fun of or accused her of not having a disability, h) threatened to suspend her privileges if she continued to request reasonable modifications, i) threatened denial of services, j) inaccurately and improperly cited her as a "no show," and (k) failed to investigate or equitably resolve complaints filed by Plaintiff or against Plaintiff.

100.    As such, Plaintiff was denied paratransit services and reasonable modifications.

101.    The County has discriminated Ms. Ananth with service denials and threats of progressive service denials on the basis of complaints it received and/or would receive against her. ADA Title II does not specify a "Complaint against a rider" as a basis for service denial, instead ADA Title II stipulates that the basis of service denial should be only due to rider conduct that is violent, seriously disruptive, or illegal conduct, or that individual constitutes a direct threat to others. 49 C.F.R §37.5 (h). The definition of "direct threat" is to be interpreted consistently with the parallel definition in the Department of Justice regulations. 49 C.F.R §37.3 Appendix D. Given that a service refusal can be a denial of a civil right, the threshold for seriously disruptive conduct, like the other denial bases, is an intentionally high standard. The complaints against Ms.

Ananth are baseless and do not rise to the level of the criteria specified in 49 C.F.R §37.5 (h), hence the service denials of Ms. Ananth are the denial of her civil rights.

102.    STAR is required to provide Ms. Ananth, who was denied service or threatened with progressive service denials, an opportunity to contest those decisions. However, Ms. Ananth was never provided an opportunity for due process, and/or to contest a) service denials, and b) threats of progressive service denials.

103.    On numerous occasions, Plaintiff has reported instances of behavior of the Defendants in violation of the ADA Title II.

104.    In response, Plaintiff has been threatened with complaints, charged with "no shows," had paratransit services suspended, cited for improper and baseless violations, and denied access to paratransit services.

105.    Defendants are required to adopt procedures that incorporate appropriate due process standards and provide for the prompt and equitable resolution of complaints they receive alleging any action prohibited by 49 C.F.R.§ part 37, in a manner that does not discriminate against Ms. Ananth. 49 CFR 37.17(b).

106.    Under the ADA Title II, the Defendants are also required to promptly communicate their response to the complaint allegations, including its reasons for the response, to the complainant. 49 C.F.R. § 37.17(b)(3).

107.    Through the actions of the Defendants described above, Defendants have a) failed to adopt and apply appropriate due process to investigate complaints filed by Ms. Ananth and/or complaints filed against Ms. Ananth, and b) failed to promptly communicate their response.

108.    Pursuant to the Title II of the ADA, Defendants are required to ensure that personnel are trained to proficiency, as appropriate to their duties, so that Defendants operate vehicles safely

and properly assist and treat Ms. Ananth with appropriate attention to her disability. 49 C.F.R §37.173.

109.     Through the actions of the Defendants as described above, Defendants have failed to ensure their personnel are trained proficiently in accordance with 49 C.F.R §37.173.

110.     Pursuant to Title II of the ADA, the County is prohibited from contracting away its ADA responsibilities. The County is required to ensure that RTC and Diamond meet the requirements of 49 C.F.R. § 37 that would apply to it, if the County itself provided the service. 49 C.F.R § 37.23(a). RTC and Diamond "stand in the shoes" of the County with whom they contract for both provision of service and vehicle acquisition. 49 C.F.R. § 37.23 Appendix D.

111.     Through the County's actions as described above, in numerous instances, the County has failed to ensure RTC and Diamond meet the requirements of 49 C.F.R. §37 that would apply to STAR, if STAR itself provided the service. Through the actions of Diamond and RTC described above, in numerous instances, they have failed to adhere to the requirements of 49 C.F.R. § 37 that would apply to STAR.

112.     As a proximate result of this discrimination against Plaintiff on the basis of her disability, Plaintiff has suffered damages including  a) being late for work and medical appointments, b) missed work, and job related training, c) incurred expenses for alternative transportation, exacerbation of her physical disabilities, and d) mental and psychological damage in the form of extreme and enduring worry, suffering, pain, anxiety, humiliation, embarrassment, mental anguish, and emotional distress, all to her damage, in amounts within the jurisdictional limits of this Court, to be proved at trial.

113.     In acting as alleged herein, Defendants acted maliciously, willfully, despicably, and oppressively, with the wrongful intention of injuring Plaintiff, from an improper motive

amounting to malice, and in conscious disregard of Plaintiff's rights. Plaintiff is entitled to recover punitive damages from Defendants in amounts to be proved at trial.

114.    As a result of Defendants' acts of discrimination as alleged herein, Plaintiff is entitled to reasonable attorney's fees and costs of this suit.

## COUNT II
## Retaliation in Violation of
## the Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131, et seq.

115.    Plaintiff hereby incorporates by reference and re-alleges each of the allegations contained in the preceding paragraphs of this Complaint as if set out here in full.

116.    Under the anti-retaliation provision of ADA Title II, Defendants are prohibited from discriminating against Ms. Ananth because she has opposed any act or practice made unlawful by this part, or because she made a charge, assisted, or participated in any manner in an investigation or proceeding, under this chapter. 28 C.F.R §35.134(a); 42 U.S.C. § 12203.

117.    Pursuant to the anti-retaliation provision of ADA Title II, it is unlawful for the Defendants to coerce, intimidate, threaten, or interfere with Ms. Ananth in the exercise or enjoyment of, or on account of her having exercised or enjoyed, any right granted or protected by this chapter. 28 C.F.R §35.134(b); 42 U.S.C. § 12203.

118.    On numerous occasions, as described above, Plaintiff has reported instances of behavior in violation of the ADA Title II, filed complaints and asserted her legal rights under the ADA.

119.    In response, Defendants threatened and intimidated the Plaintiff with progressive service denials. Defendants also charged Plaintiff with "no shows," had her paratransit services suspended, cited her for improper and baseless violations, and denied access to paratransit services and reasonable modifications.

19

120.    On numerous occasions, Drivers of RTC and Diamond who discriminated and/or refused

to provide reasonable modifications to Ms. Ananth, further refused to present their Identification

Card to her, in an attempt to interfere and prevent her from filing a complaint against them.

While the drivers of RTC typically display their identification card on the sun visor, they are not

visible and /or accessible to Ms. Ananth from the back-passenger seat. Ms. Ananth complained

to STAR. STAR did not receive an equitable resolution.

121.    As a proximate result of this discrimination against Plaintiff on the basis of her disability,

Plaintiff has suffered damages including  a) being late for work and medical appointments, b)

missed work, and job related training, b) incurred expenses for alternative transportation,

exacerbation of her physical disabilities, and d) mental and psychological damage in the form of

extreme and enduring worry, suffering, pain, anxiety, humiliation, embarrassment, mental

anguish, and emotional distress, all to her damage, in amounts within the jurisdictional limits of

this Court, to be proved at trial.

122.    In acting as alleged herein, Defendants acted maliciously, willfully, despicably, and

oppressively, with the wrongful intention of injuring Plaintiff, from an improper motive

amounting to malice, and in conscious disregard of Plaintiff's rights. Plaintiff is entitled to

recover punitive damages from Defendants in amounts to be proved at trial.

123.    As a result of Defendants' acts of discrimination as alleged herein, Plaintiff is entitled to

reasonable attorney's fees and costs of this suit.

**COUNT III**
**Discrimination in Violation of**
**the Virginians with Disabilities Act, Va. Code § 51.5–44, et seq.**

124.    Plaintiff hereby incorporates by reference and re-alleges each of the allegations contained

in the preceding paragraphs of this Complaint as if set out here in full.

125.    Each town, city or county, individually or through transportation district commissions, shall ensure that persons with disabilities have access to the public transportation within its jurisdiction by either (i) use of the same transportation facilities or carriers available to the general public, (ii) provision of paratransit or special transportation services for persons with disabilities, or (iii) both. Va. Code § 51.5–44.

126.    As set forth herein, Plaintiff was unlawfully denied access to paratransit services.

127.    As a proximate result of this discrimination against Plaintiff on the basis of her disability, Plaintiff has suffered damages including expenses for alternative transportation, costs associated with leave from work, use of leave, or late arrivals to work, emotional distress and exacerbation of her physical disabilities in amounts within the jurisdictional limits of this Court, to be proved at trial.

128.    As a result of Defendants' acts of discrimination as alleged herein, Plaintiff is entitled to reasonable attorney's fees and costs of this suit.

**COUNT IV**
**Discrimination in Violation of**
**Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 et seq.**

129.    Plaintiff hereby incorporates by reference and re-alleges each of the allegations contained in the preceding paragraphs of this Complaint as if set out here in full.

130.    Ms. Ananth's physical impairments prevent her from activities such as arm elevation, lifting, carrying, pushing, pulling, prolonged repetitive strain activity such with the keyboard, standing and walking for extended periods of time, particularly with carrying belongings,

complete lacing of shoes, wearing heavy winter coats, caps, socks, and winter boots, and otherwise restricts her physical movements.

131.    Because her physical impairments substantially limit her major life activities as discussed, she is a qualified individual with disability as that term within the Rehabilitation Act.

132.    Ms. Ananth has been certified eligible for ADA Paratransit Services provided by Metro Access since late 2015 through October of 2022, due to her functional inability to navigate the fixed route system. Hence, she meets the eligibility requirements of paratransit services including STAR.

133.    Upon information and belief, Arlington County Commuter Services (ACCS) receives federal financial assistance within the meaning of the Rehabilitation Act. ACCS is also funded in part by Virginia Department of Transportation (VDOT) and the Virginia Department of Rail and Public Transportation (DRPT).

134.    The Rehabilitation Act prohibits Defendants from denying Ms. Ananth equal access to its benefits and services and equal opportunity to participate in its programs, on the basis of disability. 29 U.S.C. § 794; 49 C.F.R §27.7(a).

135.    Pursuant to the Rehabilitation Act, Defendants are required to make reasonable modifications in policies, practices, or procedures when such modifications are necessary to avoid discrimination on the basis of disability unless the recipient can demonstrate that making the modifications would fundamentally alter the nature of the service. 49 C.F.R §27.7(e).

136.    Through the conduct described herein, Defendants have discriminated against Ms. Ananth and failed to ensure effective reasonable modifications from origin to destination.

137.    Plaintiff was excluded from participation in or denied the benefits of the services, programs, or activities, or was otherwise subjected to discrimination because of her disability.

138.   On numerous occasions, Plaintiff has reported instances of behavior in violation of the Rehabilitation Act.

139.   In response, Plaintiff has been threatened with complaints, charged with "no shows," had paratransit services suspended, cited for improper and baseless violations, and denied access to paratransit services.

140.   Defendants are  required to adopt procedures that incorporate appropriate due process standards and provide for the prompt and equitable resolution of complaints they receives alleging any action prohibited by 49 CFR part 27, in a manner that does not discriminate against individuals with disabilities 49 CFR 27.13(b).

141.   Under the Rehabilitation Act, Defendants are  also required to promptly communicate their response to the complaint allegations, including its reasons for the response, to the complainant. 49 CFR 27.13(b).

142.   Through the conduct described herein, Defendants  have also failed to apply due process and failed to offer prompt equitable resolution to the complaints both against and by Plaintiff. Instead, Defendants denied services, threatened to deny services and denied requests for reasonable modifications.

143.   As a proximate result of this discrimination against Plaintiff on the basis of her disability, Plaintiff has suffered damages including expenses for alternative transportation, exacerbation of her physical disabilities, mental and psychological damage in the form of extreme and enduring worry, suffering, pain, anxiety, humiliation, embarrassment, mental anguish, and emotional distress, all to her damage, in amounts within the jurisdictional limits of this Court, to be proved at trial.

144.   In acting as alleged herein, Defendants acted maliciously, willfully, despicably, and

23

oppressively, with the wrongful intention of injuring Plaintiff, from an improper motive amounting to malice, and in conscious disregard of Plaintiff's rights. Plaintiff is entitled to recover punitive damages from Defendants in amounts to be proved at trial.

145.    As a result of Defendants' acts of discrimination as alleged herein, Plaintiff is entitled to reasonable attorney's fees and costs of this suit.

**COUNT V**
**<u>Retaliation in Violation of</u>**
**<u>Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 et seq.</u>**

146.    Plaintiff hereby incorporates by reference and re-alleges each of the allegations contained in the preceding paragraphs of this Complaint as if set out here in full.

147.    Under the Section 504 of the Rehabilitation Act, which incorporates the anti-retaliation provision of Title VI of the Civil Rights Act of 1964, Defendants are prohibited from intimidating, threatening, coercing, or discriminating against Ms. Ananth for the purpose of interfering with any right or privilege secured by Section 601 of [the Civil Rights] Act or this part, or because she has made a complaint, or participated in any manner in an investigation, proceeding, or hearing under this part. 49 C.F.R §27.123(e); 28 C.F.R § 42.107(e).

148.    On numerous occasions, as described above, Plaintiff has reported instances of behavior in violation of the Rehabilitation Act, filed complaints and asserted her legal rights under the Rehabilitation Act.

149.    In response, Defendants threatened and intimidated the Plaintiff with progressive service denials. Defendants also charged Plaintiff with "no shows," had her paratransit services suspended, cited her for improper and baseless violations, and denied access to paratransit services and reasonable modifications.

150.    On numerous occasions, Drivers of RTC and Diamond who discriminated and/or refused to provide reasonable modifications to Ms. Ananth, further refused to present their Identification Card to her, in an attempt to interfere and prevent her from filing a complaint against them. While the drivers of RTC typically display their identification card on the sun visor, they are not visible and /or accessible to Ms. Ananth from the back-passenger seat. Ms. Ananth complained to STAR. STAR did not provide an equitable resolution.

151.    As a proximate result of this discrimination against Plaintiff on the basis of her disability, Plaintiff has suffered damages including  a) being late for work and medical appointments, b) missed work, and job related training, b) incurred expenses for alternative transportation, exacerbation of her physical disabilities, and d) mental and psychological damage in the form of extreme and enduring worry, suffering, pain, anxiety, humiliation, embarrassment, mental anguish, and emotional distress, all to her damage, in amounts within the jurisdictional limits of this Court, to be proved at trial.

152.    In acting as alleged herein, Defendants acted maliciously, willfully, despicably, and oppressively, with the wrongful intention of injuring Plaintiff, from an improper motive amounting to malice, and in conscious disregard of Plaintiff's Rights. Plaintiff is entitled to recover punitive damages from Defendants in amounts to be proved at trial.

153.    As a result of Defendants' acts of discrimination as alleged herein, Plaintiff is entitled to reasonable attorney's fees and costs of this suit.

## COUNT VI
### Fraud

154.    Plaintiff hereby incorporates by reference and re-alleges each of the allegations contained in the preceding paragraphs of this Complaint as if set out here in full.

25

155.    Defendants and/or their employees made numerous misrepresentations and concealed material facts, which were made regarding issues and facts that were present when the material misrepresentations were made.

156.    Specifically, drivers for RTC and Diamond have filed false reports/complaints with STAR against Plaintiff.

157.    In response to these false reports, STAR has suspended Plaintiff's services and threatened to suspend services upon further complaints from drivers.

158.    STAR indicated that it informed Diamond and RTC, via email, that Plaintiff would be suspended from further services if such events occurred.

159.    Drivers for the Defendants have indicated a collaborative effort to file baseless and false complaints against Plaintiff in order to have her services suspended.

160.    These misrepresentations were made with knowledge of their falsity and with the intent to damage Plaintiff.

161.    As a direct and proximate result of these material misrepresentations, Plaintiff has suffered harm. Absent these misrepresentations, Plaintiff would not have had her services suspended and would not have been threatened to have her services further extended.

162.    Defendants undertook this fraudulent conduct in an effort to silence or suppress Plaintiff's complaints, the lack of accommodations, and the failures to provide paratransit services to Plaintiff.

163.    Defendants thus acted under circumstances amounting to a reckless, willful, and wanton disregard of Plaintiff's rights, and justify the award of punitive damages.

## COUNT VII
## Conspiracy

164.    Plaintiff hereby incorporates by reference and re-alleges each of the allegations contained

in the preceding paragraphs of this Complaint as if set out here in full.

165.    Defendants and/or their employees made numerous misrepresentations and concealed material facts, which were made regarding issues and facts that were present when the material misrepresentations were made.

166.    Specifically, drivers for RTC and Diamond have filed false reports/complaints with STAR against Plaintiff.

167.    In response to these false reports, STAR has suspended Plaintiff's services and threatened to suspend services upon further complaints from drivers.

168.    STAR indicated that it informed Diamond and RTC, via email, that Plaintiff would be suspended from further services if such events occurred.

169.    Drivers for the Defendants have indicated a collaborative effort to file baseless and false complaints against Plaintiff in order to have her services suspended.

170.    Thus, Defendants combined, associated, agreed or acted in concert together for the purpose of willfully and maliciously injuring Plaintiff.

171.    Defendants acted intentionally, purposefully, and without lawful justification in conducting the actions described herein.

172.    Defendants thus acted under circumstances amounting to a reckless, willful, and wanton disregard of Plaintiff's rights, and justify the award of punitive damages.

### REQUEST FOR RELEIF

WHEREFORE, the premises considered, Plaintiff respectfully prays that this Honorable Court, grants her the following relief:

A.  Enter judgment on Plaintiff's behalf against Defendants;

B.  Award Plaintiff compensatory damages in an amount to be proven at trial, but no less

than $1,000,000 for each Count set forth herein;

C. Award Plaintiff punitive damages in an amount to be proven at trial;

D. Award Plaintiff her court costs, expenses, attorneys' fees, prejudgment interest and post-judgment interest pursuant to 42 U.S.C. § 12205 and 29 U.S.C. § 794a(b);

E. Enter a declaratory judgment that Defendants' foregoing conduct is in violation of the Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132 *et seq.*, and § 504 of the Rehabilitation Act;

F. Order that Defendants be prohibited from continuing to maintain its illegal policy, practice or custom;

G. Order that Defendants be required to promulgate an effective policy against such discrimination and to adhere thereto;

H. Enter an injunction directing Defendants to take all affirmative steps necessary to remedy the effects of the discriminatory and retaliatory conduct described herein and to prevent similar occurrences in the future; and

I. Grant such other relief as this Court may consider just and proper.

Respectfully submitted,

By Counsel

Dirk McClanahan, Esq. (VSB No. 81208)
Zach Miller, Esq. (VSB No. 85860)
McClanahan Powers, PLLC
8133 Leesburg Pike, Suite 130
Vienna, Virginia 22182
Tel: (703) 520-1326
dmcclanahan@mcplegal.com
zmiller@mcplegal.com
*Counsel for Plaintiff*

28